UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: RANCHER ENERGY CORP., ) | |
| ) | Case No. 09-32943-MER |
| Debtor. ) | |
| ) | Chapter 11 |
| RANCHER ENERGY CORP, ) | |
| ) | |
| Plaintiff. ) | Adv. No. 10-_____-MER |
| ) | |
| v. ) | |
| ) | |
| GASROCK CAPITAL, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**COMPLAINT (1) TO RECHARACTERIZE INTERESTS AS LIENS; (2) FOR DAMAGES RESULTING FROM VIOLATIONS OF USURY LAW; (3) TO AVOID FRAUDULENT TRANSFERS; (4) TO AVOID PREFERENCES; and (5) TO AVOID UNAUTHORIZED POSTPETITION PAYMENTS**

COMES NOW, Rancher Energy Corp., by its attorneys, Onsager, Staelin & Guyerson, LLC, and for this Complaint, states and alleges as follows:

INTRODUCTION

To grant and extend a $12.24 million loan with an original floor interest rate of 12.0%, GasRock Capital, Rancher's principal lender required the 'conveyance' of interests in Rancher's oil and gas property, but gave Rancher repurchase rights. The transfers were 'conveyances' in label only and cannot be recognized as anything other than security for the loan. The transfers also constitute the collection of interest in violation of applicable usury law and are subject to return by GasRock with statutory penalties. In addition, the transfers (and the more than $300,000 paid to the lender under the transfers) are fraudulent conveyances and/or preferences.

## PARTIES, JURISDICTION AND VENUE

1. On October 28, 2009 (the "Petition Date"), Rancher Energy Corporation ("Rancher") filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

2. Rancher continues to operate and to manage its business as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy code.

3. No trustee or examiner has been appointed in this case. No official committee of unsecured creditors has been appointed in this case.

4. On information and belief, GasRock Capital, LLC is a Delaware limited liability company with a principal place of business at 1301 McKinney St., Suite 2800, Houston, Texas 77010.

5. The claims in the this complaint arise under the Bankruptcy Code and/or arise in the bankruptcy case of Rancher, and this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).

6. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), (F), (H) and (K).

7. Venue is proper is this District pursuant to 11 U.S.C. § 1409(a).

## GENERAL ALLEGATIONS

8. Rancher is a publically traded energy and petroleum company that acquires, explores for, develops and produces oil and natural gas. Rancher specializes in applying secondary and tertiary recovery technology to older, historically productive fields in North America to extract oil and gas from fields larger oil and gas companies cannot profitably extract.

9. The present Board of Directors of Rancher took office in October, 2009, after a shareholder election ousted the previous Board and management.

10. In 2007, Rancher had significant oil and gas holdings and the experience to apply water injection technologies to extract an estimated 400 to 500 barrels of oil per day from its proven holdings, but Rancher lacked the capital necessary to undertake the steps necessary to extract that amount of oil.

11. In addition, Rancher was had plans to and was taking steps toward applying $CO_2$ injection technology to its properties. This technology is more expensive, but more effective in recovering oil and would allow Rancher to extract significantly more barrels of oil at a significantly faster rate.

12. Rancher engaged an investment banking firm to find the capital Rancher needed to fully exploit the potential of its oil and gas holdings. Rancher had several promising candidates for investment, but Rancher believed that the most favorable term for capital or other sums could best be obtained only after increasing its existing production. Accordingly, Rancher sought a short-term bridge loan to increase its production, while at the same time seeking investment capital. GasRock ultimately became that lender.

*Existence of A Loan*

13. On or about October 16, 2007, Rancher executed a promissory note (the "Term Note") in favor of GasRock Capital, LLC ("GasRock"), as payee, in the original principal amount of $12,240,000.00 (the "Loan"). The Term Note was executed and delivered subject to the terms of that certain Term Credit Agreement, also dated October 16, 2007 (as amended from time to time thereafter, the "Credit Agreement") between Rancher and GasRock, with a maturity of October 31, 2008 (the "Original Maturity").

14. The obligations incurred under the Term Note and the Credit Agreement are secured by liens on and security interests in substantially all of Rancher's real and personal property (the "Prepetition Liens"), including Debtor's rights in certain mineral interests described in Exhibit A to the Mortgage (defined below).

15. The Prepetition Liens are reflected in various collateral and security documents executed by and between the Rancher and GasRock, including (i) that certain Mortgage, Security Agreement, Financing Statement and Assignment of Production and Revenues, dated October 16, 2007 (the "Mortgage"), (ii) that certain Security Agreement, dated October 16, 2007 by Rancher in favor of GasRock (the "Security Agreement"), (iii) the Restricted Account and Securities Account Control Agreement, dated October 16, 2007 (the "Account Control Agreement") and (iv) UCC- 1 financing statements, among other collateral and security documents (collectively, the "Security Documents" and, together with the Term Note, the Credit and all related agreements executed in connection therewith, the "Loan Documents").

16. After a close examination of Rancher's financials and as a condition of the Loan, GasRock required Rancher to transfer to GasRock a 2.0% overriding royalty interest (the "Initial ORRI"), which is an interest in all oil and gas produced and saved from Rancher's oil and gas leases. The Initial ORRI has no termination date or monetary limitation on the amount Gas Rock could be paid.

17. In June, 2008, the price Rancher received for a barrel of crude oil peaked at more than $128 per barrel, but that price fell to $63 per barrel by October, 2008, and by December, 2008, bottomed at $25 per barrel. This drop, along with the global financial crisis, reduced the value of Rancher's oil and gas holdings and significantly reduced the ability of Rancher to obtain investment capital or permanent financing to replace GasRock.

*Extensions*

18. On or about October 22, 2008, Rancher and GasRock entered into a First Amendment to Term Credit Agreement (the "First Amendment"). In the First Amendment, GasRock agreed to extend the Original Maturity to April 30, 2009 (approximately six and one half months) in exchange for the immediate repayment of approximately $2.24 million and the grant of an additional a 1.0% overriding royalty interest in Rancher's oil and gas leases (the "Extension ORRI").[1]

19. During the time period of the First Amendment, the price Rancher received for a barrel of oil remained relatively low (average of $40 per barrel) and refinance loans and investment capital were impossible for Rancher to obtain.

20. The Credit Agreement and Term Note were modified by six additional Amendments, each of which extended the maturity of the Term Note for a total of thirty four days as follows:

   a. On or about April 30, 2009, Rancher and GasRock entered into a Second Amendment to Term Credit Agreement (the "Second Amendment") that extended the maturity of the Term Note until May 8, 2009.

   b. On or about May 8, 2009, Rancher and GasRock entered into a Third Amendment to Term Credit Agreement (the "Third Amendment") that extended the maturity of the Term Note until May 13, 2009.

   c. On or about May 13, 2009, Rancher and GasRock entered into a Fourth Amendment to Term Credit Agreement (the "Fourth Amendment") that extended the maturity of the Term Note until May 19, 2009.

   d. On or about May 19, 2009, Rancher and GasRock entered into a Fifth Amendment to Term Credit Agreement (the "Fifth Amendment") that extended the maturity of the Term Note until May 21, 2009.

   e. On or about May 21, 2009, Rancher and GasRock entered into a Sixth Amendment to Term Credit Agreement (the "Sixth Amendment") that extended the maturity of the Term Note until May 27, 2009.

   f. On or about May 27, 2009, Rancher and GasRock entered into a Seventh Amendment to Term Credit Agreement (the "Seventh Amendment") that extended the maturity of the Term Note until June 3, 2009.

21. During time period of the Second Amendment through the Seventh Amendment, the price Rancher received for a barrel of oil remained relatively low (average $56 per barrel) and refinance loans and investment capital remained impossible for Rancher to obtain.

---

[1] The Initial ORRI and the Extension ORRI may be referred to collectively as the "ORRI".

22. On or about June 3, 2009, Rancher and GasRock entered into an Eighth Amendment to Term Credit Agreement (the "Eighth Amendment"). In the Eighth Amendment, GasRock agreed to extend the maturity of the Term Note for approximately four months to October 15, 2009 in exchange for a 10.0% net profits interest in Rancher's oil and gas leases (the "10% NPI") and an increase in the interest rate floor to 16.0% per year.

23. The 10% NPI entitles GasRock to be paid an amount equal to the excess of the sum of crude oil proceeds plus hedge settlements, over the sum of lease operating, marketing, transportation and production tax expenses. Importantly, the 10% NPI is calculated before Rancher pays certain necessary costs of its business, such as capital costs and well plugging costs, which are major considerations and costs in the operation and development of Rancher's properties. Thus, the 10% NPI amounts to a right to payment equivalent to an overriding royalty interest of 6% to 7%.

24. The Rocky Mountain industry standard for attracting investment funding requires a company to have close an 80% net revenue interest, or at least a figure close to 80%. The 10% NPI and the Extension ORRI left Rancher with only about a 70% net revenue interest. During time extension period of the Eighth Amendment Rancher was unable to obtain a refinance loan or investment capital, in large part because the Extension ORRI and the 10% NPI left Rancher with too small a net revenue interest in its oil and gas leases to make outside investment attractive. This made Rancher unable to attract additional capital or financing, effectively gave GasRock control over the operation of the fields and contributed significantly to Rancher's inability to repay the Loan.

25. The Term Note matured on October 15, 2009 without Rancher finding replacement capital.

26. As of the Petition Date, GasRock asserts a secured claim against the Rancher, secured by the Prepetition Liens, in the amount of not less than $10,207,000.00 plus interest and incurred and unpaid expenses, fees and costs provided under the Credit Agreement (the "Lender Claim").

*Initial ORRI, Extension ORRI and 10% NPI*

27. The Initial ORRI, the Extension ORRI and the 10% NPI interests are created under and governed by Wyoming law. An overriding royalty interest is a real property interest under Wyoming law. The 10% NPI is a recorded burden on Rancher's real property.

28. The Initial ORRI was recorded in the real property records of the Natrona County, Wyoming Clerk and Recorder on October 29, 2007 at reception number 831005 and recorded in the real property records of the Converse County, Wyoming Clerk and Recorder on October 31, 2007 at book 1321, page 0792.

29. At the time it was given, the Initial ORRI had an estimated value of $9.45 million.

30. Section 8.5(d) of the original Credit Agreement provides that Rancher can repurchase the Initial ORRI by paying to GasRock an amount calculated as follows:

> The amount of the purchase price for the repurchased ORRI, shall be the "supplemental amount" needed to cause the following equation to equal 1.2: (i) the *sum of* (A) the Principal Amount paid to Lender, *plus* (B) all accrued interest on the Principal Amount paid to Lender, *plus* (C) all payments in respect of the ORRI paid to Lender, *plus* (D) the supplemental amount, *divided by* (ii) 12,240,000.

31. Thus, Rancher could repurchase half of the Initial ORRI by paying GasRock an amount that would guaranty GasRock a 20% return on the Loan.

32. The conveyance of the Extension ORRI was recorded in the real property records in Converse County, Wyoming Clerk and Recorder on November 17, 2008 at Book 1349 and page 069 and was recorded in the real property records of the Natrona County, Wyoming Clerk and Recorder on November 19, 2008 at reception number 855714.

33. At the time it was given, the incremental 1% Extension ORRI had an estimated value of $4.7 million.

34. The First Amendment modified the formula contained in Section 8.5(d) of the Credit Agreement that determines the price at which Rancher can repurchase 1/3 of the total ORRI interest to increase the guaranteed return from 20% to 40% as follows:

> The amount of the purchase price for the repurchased ORRI shall be the "supplemental amount" needed to cause the following equation to equal 1.4: (i) the *sum of* (A) the Principal Amount paid to Lender, *plus* (B) all accrued interest on the Principal Amount paid to Lender, *plus* (C) all payments in respect of the ORRI paid to Lender, *plus* (D) the supplemental amount, *divided by* (ii) 12,240,000.

35. Thus, Rancher could repurchase 1/3 of the Initial ORRI and the Extension by paying GasRock an amount that would guaranty GasRock a 40% return on the Loan, before accounting for the value of the transfers of the remaining ORRI interests, the 10% NPI, or other miscellaneous payments made to GasRock.

36. In negotiating the Eighth Amendment, GasRock demanded a 15% net profits interest in substantially all of Rancher's oil and gas leases and Rancher would have a right to repurchase 2/3 of the net profits interest for $3.0 million. At the last minute, GasRock unilaterally determined that it would take only a 10% net profits interest.

37. In the Eighth Amendment, Rancher was given a right to repurchase a portion of the 10% NPI as follows:

> Borrower shall have the right to purchase from Lender either (i) for the period beginning on the Eighth Amendment Closing Date and ending on August 7, 2009, two-thirds (2/3rd), but not less, of the Net Profits Interest granted by Borrower to Lender pursuant to the NPI Conveyance for the sum of $2,000,000 in cash or (ii) solely to the extent Borrower has not exercised its rights under (i) immediately above, for the period beginning August 8, 2009 and ending on the October 15, 2009, one-third (1/3rd), but not less, of the Net Profits Interest granted by Borrower to Lender pursuant to the NPI Conveyance for the sum of $1,333,333 in cash. Either such purchase and sale shall be without representation or warranty from Lender or and any such conveyance instrument shall otherwise be on terms satisfactory to Lender.

38. Thus, Rancher could repurchase 2/3 of the 10% NPI for $2.0 million ($300,000 per percentage point) during the first two months of the extension, or repurchase 1/3 of the 10% NPI for $1.3 million ($400,000 per percentage point) during the remaining two months of the extension period.

39. At the time it was given, the 10% NPI had an estimated value of $35.4 million.

40. The 10% NPI was recorded in the real property records of the Converse County, Wyoming Clerk and Recorder on June 17, 2009 and was recorded in the real property records of the Natrona County, Wyoming Clerk and Recorder on June 15, 2009 at reception number 868538.

41. As of January 31, 2010, GasRock has received payments on its 10% NPI in an amount of $64,897.15 since the interest was taken in July, 2009 and has another approximately $60,000 that has accrued but not yet been paid.

42. As of January 31, 2010, GasRock has also received total payments on ORRI interest of $289,356.75.

43. Payments to GasRock continue to accrue post petition on the 10% NPI and the ORRI interests.

44. None of the ORRI or 10% NPI payments made by Rancher to GasRock have been applied to reduce the Loan obligation(s).

### FIRST CLAIM FOR RELIEF
### (Recharacterization of the Initial ORRI as a Security Interest)

45. Rancher incorporates the previous paragraphs of this complaint as if set forth fully herein.

46. At the time it was given, the Initial ORRI had an estimated value of $9.45 million.

47. The transfer of the Initial ORRI was accompanied by a lending transaction.

48. The Credit Agreement granted Rancher a right to repurchase a portion of the Initial ORRI.

49. There is a disparity between the value of the Initial ORRI and the repurchase amount.

50. Despite the conveyance of the Initial ORRI, Rancher remained in possession of the oil and gas leases.

51. The Initial ORRI was not a true conveyance, but was in substance security for the Loan.

## SECOND CLAIM FOR RELIEF
### (Recharacterization of the Extension ORRI as a Security Interest)

52. Rancher incorporates the previous paragraphs of this complaint as if set forth fully herein.

53. At the time it was given, the incremental 1 % Extension ORRI had an estimated value of $4.7 million.

54. The transfer of the Extension ORRI was accompanied by a lending transaction.

55. The First Amendment granted Rancher a right to repurchase the Extension ORRI

56. There is disparity between the value of the Extension ORRI and the repurchase amount.

57. Despite the 'conveyance' of the Extension ORRI, Rancher remained in possession of its oil and gas leases.

58. The Extension ORRI was not a conveyance, but was security for the Loan.

## THIRD CLAIM FOR RELIEF
### (Recharacterization of the 10% NPI as a Security Interest)

59. Rancher incorporates the previous paragraphs of this complaint as if set forth fully herein.

60. At the time it was given, the 10% NPI had an estimated value of $35.4 million.

61. The transfer of the 10% NPI was accompanied by a lending transaction.

62. The Eighth Amendment granted Rancher a right to repurchase the 10% NPI.

63. There is a disparity between the value of the 10% NPI and the repurchase amount.

64. Despite the 'conveyance' of the 10% NPI, Rancher remained in possession of its oil and gas leases.

65. The 10% NPI was not a conveyance, but was in substance security for the Loan.

## FOURTH CLAIM FOR RELIEF
### (Damages for Violation of Usury Law)

66. Rancher incorporates the previous paragraphs of this complaint as if set forth fully herein.

67. In addition to paying interest in the amount of $2,664,571.00, Rancher paid Gasrock, GasRock also received quarterly administrative fees of $5,000 from Rancher and Rancher has paid $45,000 in such fees as of January 31, 2010. GasRock also charged and Rancher has paid approximately $320,000 in other payments labeled as various 'fees.'

68. The interest paid, the fees paid, the transfer of the ORRI, the transfer of the 10% NPI, and the amounts paid on the ORRI and 10% NPI constitute compensation for the use, forbearance, or detention of money and are interest.

69. By including value of the transfer of ORRI and the 10% NPI, plus payments made under each, with the interest and other fees paid, the effective interest rate on the Loan exceeded the maximum amount allowed by law.

70. As a result of GasRock's collection of interest beyond the amount allowed by law, Rancher is entitled to a penalties, including triple the amount collected above the statutory rate, the return of a portion of the principal of the Loan, plus recovery of its attorneys fees and costs incurred as damages.

## FIFTH CLAIM FOR RELIEF
### (Constructive Fraudulent Transfer of the Extension ORRI the 10% NPI and All Payments Made on the ORRI and 10% NPI Pursuant to 11 U.S.C. § 548(a)(1)(B))

71. Rancher incorporates the previous paragraphs of this complaint as if set forth fully herein.

72. The Extension ORRI and the 10% NPI and all payments made on the ORRI and 10% NPI were transfers of interests in Rancher's property within two years of the Petition Date to GasRock.

73. The Extension ORRI and the 10% NPI were transferred when Rancher was insolvent and/or the transactions left Rancher with unreasonably small capital. Among other things, Rancher was not paying its debts as they became due.

74. The value of the Extension ORRI far exceeded a reasonable fee for the extension granted by GasRock.

75. The value of the 10% NPI far exceeded a reasonable fee for the extension granted by GasRock.

76. As a result, Rancher did not receive reasonably equivalent value for the Extension ORRI, the 10% NPI and all payments made on the ORRI and 10% NPI.

77. The Extension ORRI, the 10% NPI and all payments made on the ORRI and 10% NPI are avoidable under 11 U.S.C. § 548(a)(1)(B) and Rancher is entitled to judgment avoiding the transfer of the Extension ORRI, the 10% NPI and all payments made on the ORRI or a money judgment in an amount equal to the value of the Extension ORRI, the 10% NPI and all payments made on the ORRI and 10% NPI pursuant to 11 U.S.C. § 550.

## SIXTH CLAIM FOR RELIEF
### (Constructive Fraudulent Transfer of the Extension ORRI and the 10% NPI Pursuant to the Uniform Fraudulent Transfer Act and 11 U.S.C. § 544)

78. Rancher incorporates the previous paragraphs of this complaint as if set forth fully herein.

79. The transfers of the Extension ORRI and the 10% NPI and all payments made on the ORRI and 10% NPI are fraudulent transfers under Wyo. Stat. Ann. § 34-14-201, et seq. and/or Colo. Rev. Stat. § 38-8-101 et seq.

80. Rancher has unsecured creditors whose debts existed as of the date of the transfers of the Extension ORRI and the 10% NPI.

81. Pursuant to 11 U.S.C. § 544(b)(1), Rancher may bring an action to avoid those transfers.

82. Pursuant to Wyo. Stat. Ann. § 34-14-201, et seq. and / or Colo. Rev. Stat. § 38-8-101, et seq., Rancher is entitled to a judgment avoiding the transfers of the Extension ORRI and the 10% NP or a money judgment in an amount equal to the value of the Extension ORRI and the 10% NPI as of the dates they were transferred.

## SEVENTH CLAIM FOR RELIEF
### (Avoidable Preferences Under 11 U.S.C. § 547)

83. Rancher incorporates the previous paragraphs of this complaint as if set forth fully herein.

84. The transfers of the Extension ORRI, the 10% NPI and all money paid on the ORRI interests and the 10% NPI from October 29, 2008, to the Petition Date constitute transfers of interests in Rancher's property to or for the benefit of GasRock that occurred within one year of the Petition Date.

85. At all times relevant herein GasRock received weekly production information from Rancher, as well as monthly financial reporting and other proprietary and confidential information as requested by GasRock.

86. GasRock determined how the Loan proceeds would be used.

87. At all times relevant herein GasRock occupied the dual position of lender to Rancher and a business stakes holder and a property interest owner as reflected by its royalty and net profits interests in the Rancher field and operations.

88. At all times relevant herein GasRock occupied an insider position being privy to proprietary and confidential information and also holding business stake and ownership or direct or indirect property interest as reflected by its royalty and net profits interests in the Rancher field and operations.

89. Because of its actions and demands GasRock has assumed fiduciary duties and obligations to Rancher and its shareholders, who were unable to protect themselves from Gasrock insider deals and overreaching.

90. Accordingly, GasRock was a person in control of Rancher and was, therefore, an Insider.

91. During the one year period prior to the Petition Date, GasRock was paid $106,843.97 to GasRock on the ORRI.

92. During the one year period prior to the Petition Date, GasRock was paid $23,931.64 on the 10% NPI.

93. The Extension ORRI, the 10% NPI were given to secure an extension of the Loan and were, therefore, on account of antecedent debt.

94. The Extension ORRI and the 10% NPI were transferred when Rancher was insolvent because Rancher was not paying its debts as they became due.

95. The payments Rancher made to GasRock on the Initial ORRI, the Extension ORRI and the 10% NPI were made when Rancher was insolvent because Rancher was not paying its debts as they became due.

96. The Extension ORRI, the 10% NPI and all payments Rancher made to GasRock on the Initial ORRI, the Extension ORRI and the 10% NPI allowed GasRock to receive more than GasRock would have received in a chapter 7 bankruptcy.

### EIGHTH CLAIM FOR RELIEF
### (Avoidable Postpetition Transfer Under 11 U.S.C. § 549)

97. Rancher incorporates the previous paragraphs of this complaint as if set forth fully herein.

98. Payments to GasRock continue to accrue post petition on its 10% NPI and the ORRI. Since the Petition Date, GasRock has been paid $32,753.49 on the ORRI, and $40,965.51 on the 10% NPI.

99. To the extent the Initial ORRI, the Extension ORRI and the NPI are properly recharacterized as security interests, determined to be void for violation of usury laws, or avoided, postpetition payments Rancher made on the Initial ORRI, the Extension ORRI and the NPI are not authorized by the court or by the Bankruptcy Code.

### NINTH CLAIM FOR RELIEF
### (Equitable Subordination under 11 U.S.C. § 510(c))

100. Rancher incorporates the previous paragraphs of this complaint as if set forth fully herein.

101. GasRock engaged in the management and strategic decision making of Rancher. GasRock is an insider and fiduciary of Rancher and engaged in inequitable conduct.

102. GasRock's inequitable conduct was a significant contributing factor to Rancher's bankruptcy by siphoning the revenue Rancher needed and would have otherwise used to operate its business. GasRock's inequitable conduct has also damaged other creditors because Rancher's debt to GasRock would be lower had GasRock applied the more than $300,000 of payments under the Initial ORRI, the Extension ORRI and the 10% NPI to the Loan.

103. The success of Rancher's business requires an increase in the production of oil from its properties. As a result of GasRock's inequitable conduct, Rancher became undercapitalized and unable to attract the funding necessary to effectively increase its production.

104. Equitably subordinating GasRock's claim is not inconsistent with other provisions of the Bankruptcy Code.

WHEREFORE Plaintiff requests that a judgment be entered in their favor and against GasRock:

(a) for a declaration that the Initial ORRI, the Extension ORRI and the 10% NPI are security for the Loan, not outright conveyances to GasRock and recharacterization of the same;

(b) for a money judgment equal to all interest in excess of the maximum amount allowed by applicable law, treble damages and other remedies allowed by law;

(c) for a money judgment equal to the value of the Extension ORRI, the 10% NPI and all payments made on the ORRI and 10% NPI as constructive fraudulent conveyances as of the date those transfers were made;

(d) for a judgment avoiding the transfers of the Extension ORRI, the 10% NPI and all payments made on the ORRI and the 10% NPI as constructive fraudulent conveyances;

(e) for a money judgment equal to the value of the Extension ORRI, the 10% NPI and all amounts paid to GasRock on the ORRI and the 10% NPI from October 29, 2008 through the Petition Date as preferences;

(f) for a money judgment equal to the all postpetition amounts Rancher paid to GasRock on the ORRI and the 10% NPI as unauthorized postpetition transfers;

(g) for imposition of a Constructive or Equitable Trust on all interests of Rancher held by GasRock, for an accounting of all funds paid and for a retroactive application of those payments to the Loan;

(h) for an order subordinating any allowed claim of GasRock to all other allowed claims; and

(h) for such further relief, including equitable relief, that is just and appropriate under the circumstances, including an award of fees, costs, and other lititgation costs.

Dated: February 12, 2010.	Respectfully submitted,

              ONSAGER, STAELIN & GUYERSON, LLC

              /s/ Michael J. Guyerson
                Christian C. Onsager, #06889
                Michael J. Guyerson, #11279
                Andrew D. Johnson, #36879
              1873 S. Bellaire St., Suite 1401
              Denver, Colorado 80222
              Ph: (303) 512-1123
              Fax: (303) 512-1129
              consager@osglaw.com